STATE *v.* BOMER.

(*Jackson*, April Term, 1942.)

Opinion filed June 2, 1942.

70.

J. S. ALLEN, EDWARD P. RUSSELL, and CLARENCE E. CLIFTON, all of Memphis, for complainant.

J. G. REASONOVER, of Memphis, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The questions before the Court for our determination arise out of a summary proceeding for the disbarment of defendant in the Chancery Court of Shelby County, on motion of Chancellor JOHN E. SWEPSTON and Chancellor LOIS D. BEJACH.

The record discloses that prior to this proceeding the defendant had filed a bill in the Chancery Court of Shelby County seeking the disbarment of Marion S. Boyd and William Gerber. A separate bill was filed against each of these attorneys, the one against Boyd being filed on August 14, 1940, and the one against Gerber on December 14, 1940. Both of 'these suits were dismissed by the Chancellor, from which decree there was no appeal. The suit against Boyd was dismissed because it was without merit and after the introduction of proof by the complainant. Following the dismissal of the suit against Gerber, the Chancellors, acting upon the recommendation of J. S. Allen and Edward P. Russell, attorneys and

*amici curiae*, that the Court should of its own motion institute formal proceedings for disbarment of J. O. Bomer, Jr., entered the citation against him. The substance of the citation against Bomer was (1) that he made false and scandalous statements concerning the defendants Boyd and Gerber, and that he did so wilfully and maliciously, without making any real investigation; and (2) that he instituted said proceedings upon no just grounds, without any probable cause, and was actuated by motives of personal hatred and ill-will; that he was abusing the Court's process as a means of carrying out his desire to wreak vengeance upon them, he having conceived the idea that the defendants had been active in securing his (Bomer's) disbarment on May 21, 1937.

When the suit against Gerber came on to be heard, the defendant moved the Court to inquire into the various charges in the petition on the ground that said charges were without merit and that Bomer was abusing the process of the Court; that he had made no investigation that would justify a belief that they, or any one of them, could be substantiated. Upon a preliminary hearing and after complainant Bomer had made a full statement under oath, the Court entered an order dismissing the bill. After the order of citation was entered, the Chancellors, being incompetent to try the cause, recused themselves and requested Judge HARRY ADAMS, Judge of the Circuit Court of Shelby County, First Division, and Judge J. P. M. HAMNER, Judge of the Circuit Court of said county, Third Division, to sit by interchange for them. The order setting forth their incompetency and notification of the above named Circuit Court Judges was entered February 11, 1941. It appears that pursuant to this order the Judges accepted and took the places of the Chancellors on the bench, and, while sitting jointly, heard the

case by interchange. On February 17, 1941, the defendant made a motion for a change of venue, (1) "because this case should have been so transferred when the order for the interchange of judges was entered; (2) because Judges ADAMS and HAMNER are interested in this litigation as honorary members of the Memphis and Shelby County Bar Association." The motion was overruled.

Thereupon on the same day the defendant filed his answer to the charges made against him. The answer admits his own disbarment for one year in 1937, the prosecutor being the Memphis and Shelby County Bar Association, and that his two suits against Boyd and Gerber had been finally determined in their favor. The answer then generally denies that the cases against Boyd and Gerber were filed with a malicious motive; denies that he was actuated by any desire to retaliate against them, and that the charges were made without any investigation. He insists in his said answer that all charges were made in good faith and after a full investigation. The answer not only makes a general denial, but a specific denial of each and every charge made against him.

It appears that on May 3, 1941, the Court permitted an amendment to be filed to the answer averring:

"That any statement orally or made in writing made by defendant of which complaint is made in this cause were within the constitutional privileges guaranteed to every citizen respecting freedom of speech by the Constitution of the United States and of the State of Tennessee, and defendant relies upon same as a defense in this action." (Transcript, page 56.)

Upon a full hearing of the case, the Judges, sitting by interchange, held that all the charges made by Bomer against Boyd and Gerber were false; that he knew or

should have known that they were false; that he made the charges maliciously and without probable cause; that under Section 9975 of the Code he should be permanently disbarred and deprived of his license to practice law.

When the case came on to be heard on appeal to the Court of Appeals, that Court found the facts and affirmed the decree of the lower court. The opinion of the Court of Appeals, consisting of twenty-two pages, discusses every charge. It plainly appears from the record that there has been a concurrent finding of fact by the Court of Appeals and the trial court, which is therefore binding upon this Court. We are of opinion that there is ample evidence to justify such finding. All assignments of error, based solely upon the evidence, must be and are accordingly overruled. The insistence of counsel for defendant that the case should be tried *de novo* in this Court because of the constitutional right of free speech, and the lack of jurisdiction of the Chancellors, is wholly without merit.

We proceed now to consider assignments of error based upon questions of law, as well as those based upon mixed questions of law and fact.

First, that the order of February 11, 1941, providing for an interchange of Judges and the appointment of Judges ADAMS and HAMNER to try this case was without authority "because it was without notice to the defendant" etc. This assignment is without merit. The law does not provide that notice shall be given to a litigant, whether plaintiff or defendant, of the interchange of judges. But regardless of any legal question the defendant lost no right by failure to receive notice, since on February 17, 1941, he made a motion for a change of venue because of the alleged interest of Judges ADAMS and HAMNER, which motion was duly considered and over-

ruled by them prior to hearing the case. They held that they were competent and there is nothing in the record to indicate that they were incompetent. Their honorary membership in the Memphis and Shelby County Bar Association did not disqualify them. *Chumbley* v. *People's Bank & Trust Co.*, 165 Tenn., 655, 57 S. W. (2d), 787; *Ex parte Alabama State Bar Association*, 92 Ala., 113, 8 So., 768, 12 L. R. A., 134, 136. The Chancellors, Swepston and Bejach, were clearly incompetent and it was entirely proper for them to recuse themselves and for the judges to sit by interchange. *In re Cameron*, 126 Tenn., 614, 650, 151 S. W., 64.

Section 9896 of the Code expressly provides that Chancellors and Judges may interchange. Section 9905 also provides that any Circuit Judge may "upon notification of a cause in which the chancellor is incompetent, as provided in [9904] take the place of the chancellor on the bench, and hear and determine the cause as chancellor," etc. *Elms* v. *State*, 29 Tenn. (10 Humph.), 128, 129; *Stuart* v. *State*, 60 Tenn. (1 Baxt.), 178. We find no merit in the defendant's assignment (1) wherein he claims that Article 1, Sections 8 and 17, of the Constitution was violated respecting the institution of disbarment by the Chancellors sitting together as one court. Either Chancellor would have had the right to enter the order of citation and the fact that it was entered by them jointly in no way jeopardized the rights and interests of the defendant. Either of the Circuit Judges was qualified under the Code to try the cause by interchange, and the fact that the two heard the case does not affect the merits of the controversy.

When the decree of disbarment was entered, the defendant prayed and was granted an appeal to the Court of Appeals. For the first time in the petition for the

writ of *certiorari* he questions the validity of the judg-. ment and decree of that Court on the ground that, since a constitutional question was raised, it had no jurisdiction. This assignment is overruled. No constitutional question was raised until after the Court of Appeals had acted. Had the question been made in good faith, the cause would have been transferred to this Court. It cannot be made for the first time in a petition for the writ of *certiorari*, especially so when it is not made in good faith and appears to be an afterthought.

▇▇▇▇ Defendant insists that in filing suits against Boyd and Gerber he was only doing his duty, that ''When attorneys know of the unprofessional conduct of a lawyer, it is his duty to bring to the attention of the court this shortcoming,'' etc. He furthermore contends that he is acting "within his constitutional rights.'' As to this contention, the Court will hardly disagree. The defendant seems to overlook the gravamen of the charge against him, that he made a charge that was false and malicious, and known to be, without any investigation, and that he was maliciously abusing the court's process to retaliate against Boyd and Gerber. The case of *In re Hickey*, 149 Tenn., 344, 347, 258 S. W., 417, does not support the defendant's contention. Hickey was not charged with abuse of the court's process, maliciously or otherwise. It is true he had criticized the Court in the newspapers, as he had the right to do if within the bounds of due propriety. In the instant case the defendant was wholly beyond the pale of any constitutional privilege when he undertook to use the processes of the court, wilfully and maliciously and without probable cause, to degrade a fellow member of the bar. Statements of attorneys made while engaged in private conversations regarding other attorneys, and even the courts, in which false accusations

are made, are not alone sufficient to warrant disbarment. But the constitutional right of free speech, which is so often abused, affords no protection to one who, by malicious acts and words, defames the very tribunal at whose altar he is called to be a minister and whose process he abuses. Lawyers are officers of the court, and when one wilfully, maliciously, and without probable cause, defames another at the bar of the court, and invokes its process in furtherance of his purpose to injure, it is a wrong against the dignity and honor of the court itself. That the defendant Bomer was aggrieved because of a disbarment proceeding against him in 1936 cannot be denied. But the record discloses that the case was instituted and prosecuted by the Memphis and Shelby County Bar Association and not by Boyd and Gerber. The lower court refused to go into the merits of that case. The record and decree were admitted only to show the result of the trial and for no other purpose. It was not admitted as proof of the charges against the defendant. In this, the Court was not in error, and the Court of Appeals was not in error in affirming the action of the trial court. And it was not error to admit the decrees of the court in the suits filed against Boyd and Gerber by defendant Bomer. It was not offered and was not considered as proof of the charges in said proceedings. Vol. I, pp. 89, 92, 93.

The burden was upon the complainant, relator to show in the instant case that the defendant made the charges without any probable cause, and without any investigation, that they were made maliciously for the purpose of degrading his adversaries, etc. The trial court having entered a decree sustaining the bill and the Court of Appeals having concurred with the trial court in the

finding of facts, it follows that the issues are foreclosed and binding upon this Court.

Responding to assignment (IV) that the defendant was not permitted to cross-examine Chancellor Bejach relative to his trial of the "Collier Case." The record reveals that the questions involved in that case were wholly irrelevant and immaterial. However, it appears that the Chancellor gave evidence about the case and was cross-examined by counsel for defendant. This assignment is overruled.

The next assignment of error (V) is that the Court declined to have a witness, Mr. E. H. Crump, appear in response to a subpoena and testify in open court. It was the insistence of defendant that Mr. Crump was at the head of a political organization that had persistently persecuted Mr. Bomer. Vol. II, p. 477. The record shows that at the time the witness Crump had had sorrow in his family by reason of the death of Mr. Dabney Crump. Counsel for the defendant refused to tell the Court what he expected to prove by the witness. The record clearly shows that Mr. Crump's deposition could have been taken, but defendant's counsel refused to take it, although relator agreed to it.

In Tennessee, disbarment proceedings are not regarded as criminal in nature; therefore defendant was not deprived of his constitutional right when testimony was available in the form of a deposition. *Davis* v. *State*, 92 Tenn., 634, 641, 23 S. W., 59.

The constitutional provision that "the accused hath the right to meet the witnesses face to face" has no application to witnesses summoned in behalf of a defendant. *Petty* v. *State*, 72 Tenn. (4 Lea), 326. Responding to defendant's request to have Mr. Crump appear in person to testify, Judge Adams ruled as follows:

"The Court has heretofore ruled that, so far as any political situation here in this county is concerned, that is not a part of this lawsuit. The Court sees no materiality that will be advanced by counsel as to any purported testimony of Mr. Crump; and, in so far as they will not divulge to the Court the materiality of any statement Mr. Crump might make here, as disclosed by the pleadings, we are of the opinion that we can do nothing further about the matter." Vol. II, page 479.

The defendant assigns as error (No. 7 and 8) that the Court of Appeals erred in not passing specifically on the several charges made by Bomer against Boyd and Gerber and in not finding additional facts. The answer to these assignments is as stated by counsel for relator: "This proceeding is in no sense a review of the decrees rendered in the Boyd and Gerber cases." The question for consideration in the instant case is, whether or not the charges made in these cases were false and malicious, made without investigation and without probable cause. If the trial court and the Court of Appeals found sufficient evidence to warrant permanent disbarment, the defendant will not be permitted to complain because of a failure to discuss and determine other issues.

In determining the question of malice, it is proper for the Court to consider the entire record, including the bill and answer, as well as attending circumstances. The trial court and the Court of Appeals in passing upon this question must have been impressed with the undisputed fact that the defendant did not file his disbarment suit against Marion Boyd until the latter was being considered for appointment as Judge of the United States District Court for West Tennessee, and at the time the suit was filed he stated to the Clerk and Master that "he did it out of revenge;" that he further

stated to Hugh Stanton he was going to file disbarment proceedings against Boyd and Gerber and every member of the Association who had anything to do with the disbarment proceedings against him and would "pauperize" them. It is further shown by the testimony of C. A. Davis that, in filing the suit against Boyd, it was with the express purpose of defeating his appointment as federal judge.

 Considering further the assignment of error that disbarment proceedings brought against another lawyer with malicious motives, the same being false and without probable cause, etc., do not warrant permanent disbarment, *In re Adriaans*, 17 App. D. C., 39, the Court found the defendant guilty of making false and scandalous statements concerning a fellow member of the bar. The Court said:

"It is no defense that such statements did not constitute a technical or indictable crime, nor does the question of privilege arise."

In discussing the merits of the controversy, the following observation is made:

"He has no right to attempt to cast foul and unfounded aspersions upon the character and conduct of his brother members of the bar, any more than he has to asperse and defame, without justification, the character and motives of the judge upon the bench. Especially is he without warrant in an attempt to make the records of the courts, from the lowest to the highest, vehicles of malicious scandal and libel of any member of the bar."

The Court quotes with approval the following language in *People ex rel. Rogers* v. *Green*, 9 Colo., 506, 13 P. 514:

"Neither the letter nor the spirit of the attorney's privilege permits him to enter our courts and spread upon judicial records charges of a shocking and felonious

character against brother attorneys, and against judges engaged in the administration of justice, upon mere rumors, coupled with facts, which should, of themselves, create no suspicion of official corruption in a just and fair mind."

*In re Ray S. Reid,* 45 App. D.C., 240, L. R. A., 1916F, 394 or *In re Fred S. Macy,* 109 Kan., 1, 196 P., 1095, 14 A. L. R., 848.

That the Court has the power, independent of statute, to enter a decree of disbarment for wrongs against the integrity of individual members of the bar, cannot be denied, especially so when committed with wilful and malicious intent. It is essential to the orderly administration of justice and for the preservation of its own dignity and honor that the officers of the court should be honorable in their dealings, not only with the court but with each other. Surely they cannot be honorable without being truthful. For the defendant to be permitted in the light of the concurrent findings of fact to claim exemption from punishment under the guise of constitutional privilege of free speech, would be to despoil the law of its virtue and bring discredit upon the courts of Tennessee.

In the case of *Smith* v. *State,* 9 Tenn. (1 Yerg.), 228, 229, Mr. Justice PECK, speaking for the Court, said:

"It is the bounden duty of courts, when their attention is directed to it, to see that such good moral character shall be constantly preserved. The property, characters, and to some extent, even the lives of individuals are committed to the care of the profession. It is not only a high and honorable calling, to which the community naturally look up, but connected with it is a trust: of the profession is expected probity, integrity and example—next to a judge he should be the guardian of the constitution and

of the law—because he is presumed to know what it is, and because his oath has bound him honestly and faithfully to walk with the pale of .her precepts.''

It is by no means a pleasant duty to enter a decree of disbarment. We are not unmindful of the fact that the defendant sought, not only to deprive a brother member of the bar of his profession, but to destroy his reputation. In addition to this, he was found guilty of maliciously abusing the process of the court. That the punishment in this case is severe cannot be denied. The defendant contends that the punishment was too severe, that it should have been a reprimand or suspension. The question rests within the sound discretion of the trial court. Mr. Justice McKINNEY, in the case of *In re Hickey*, 149 Tenn., 344, 383, 258 S. W., 417, 428, said:

''By the last clause, quoted above from said act, it was intended by the Legislature to confer upon the court the power to punish the defendant commensurate with his offense by either suspension or disbarment.''

Again in the case of *Thompson* v. *Denman*, 164 Tenn., 428, 50 S. W. (2d), 222, Mr. Justice McKINNEY, speaking for the Court, said:

''The exercise of discretion relied upon relates to the trial court rather than the appellate court.''

Under the facts of this case, there was no abuse of discretion by the trial court in entering a decree permanently disbarring defendant, and which was later affirmed by the Court of Appeals.

The writ is denied.