HARRY BERKE, Appellant, v. CHATTANOOGA BAR
ASSOCIATION and Tennessee Bar Association,
Appellees. —436 S.W.(2d) 296.

Eastern Section. January 5, 1968.

Certiorari Denied by Supreme Court October 7, 1968.

Rehearing Denied by Supreme Court December 16, 1968.

638

H. Keith Harber, Chattanooga, for appellant.

George W. Evans, Chattanooga, Foster D. Arnett, Knoxville, for appellees.

TODD, J. This is an appeal by the respondent, Harry Berke, from an order disbarring him for two years, and providing readmission to practice thereafter on specified conditions. The action was brought and prosecuted by the Chattanooga and Tennessee Bar Associations as joint petitioners.

The petition charges violation of the Canons of Professional Ethics as provided by Rule 38 of the Tennessee

Supreme Court, and Section 29-308, (1) and (5), Tennessee Code Annotated in that:

(1) Respondent committed the offense of charging usury, and other immoral and improper conduct in business dealings with certain clients.

(2) Respondent misled the court in his previous disbarment proceeding by giving a false and misleading answer in his testimony.

(3) Respondent exhibited moral turpitude rendering him unfit to continue as a licensed attorney.

Other charges were included in a supplementary petition which was dismissed because the sole witness thereto refused to testify on grounds of self incrimination. The separate opinion of this court upon the appeal of the witness, Irma Dennard Parmes, from a contempt conviction will refer to this amendment.

Petitioners rested their case in chief entirely upon the records of previous cases, which were admitted over respondent's objection. Respondent testified and presented other witnesses including character witnesses. Petitioners presented rebuttal character witnesses. The trial court sustained each of the charges of the petition and enjoined respondent from the practice of law for two years with readmission to practice only upon petition and showing of good character and observance of the decree of disbarment.

An intelligent consideration of the assignments of error requires familiarity with the complex events of the background of this case.

The following facts are undisputed, except where indicated:

Respondent has practiced law in Chattanooga since 1931. He has been successful, and other attorneys have frequently associated him in their cases with division of fees. He is a man of considerable means, with investments principally in real estate and loans. He is active in the support of political candidates of his own choice.

From time to time, respondent represented members of a family named Dennard. The parents were A. D. and Mattie Dennard. The daughter, Irma Dennard, operator of a beauty school, was helpful to respondent in his political activities.

Irma Dennard was the owner of certain property called the "Alton Park" property. She held record title to certain other property known as the "Baldwin Street" property for the benefit of her parents. Respondent denies knowledge of the interest of the parents.

Respondent made a succession of five loans to Irma, secured by mortgages on the Baldwin Street property. A charge was included in each loan for preparing and recording the mortgage. At the request of Irma, two of the mortgages were transferred to the Alton Park property, so that respondent held three mortgages on the Baldwin Street property and two mortgages on the Alton Park property.

Upon default and threat of foreclosure, Irma deeded the Baldwin Street property to respondent, who executed an agreement to reconvey the property to Irma upon payment of the loans with interest, insurance, taxes and $20.00 per month rental. This agreement was extended an additional year on the same terms, for a third year with an increased repurchase price, and for a fourth year with a further increased purchase price. After the third exten-

sion, Irma Dennard and her parents, A. D. and Mattie Dennard, filed a chancery suit against respondent to recover alleged usury and other overcharges, to set aside the deed of Irma on the Baldwin Street property, and to restore title to same to her parents.

Soon after the Dennard suit was filed, respondent purchased a first mortgage on Irma's Alton Park property (which mortgage was prior and superior to the two mortgages held by respondent on the same property). Shortly thereafter, respondent instituted foreclosure of the first mortgage and Irma was required to pay the first mortgage with substantial attorney fees to an attorney named by respondent. The Dennard's bill was amended to allege this subsequent conduct with charges of malice, oppression and coercion.

The decree concluding the Dennard case sustained the contentions of the Dennards and restored title of the Baldwin Street property to the parents, A. D. and Mattie Dennard, subject to respondent's mortgage debt.

Overcharges of usurious interest and unnecessary and excessive attorneys fees were ordered to be credited on said mortgage debt. Punitive damages were adjudged against respondent and in favor of A. D. and Mattie Dennard in the amount of $1,000, and in favor of Irma in the amount of $1,000.00. Upon appeal, this Court affirmed the action of the Chancellor in an opinion filed on July 22, 1963.

Another set of characters and events are involved in what has been referred to as the "hot money" case, or the "Dobyns" case.

Robert C. McEwan, a member of the Chattanooga bar was a friend of respondent and had associated respond-

ent with him on a number of cases on which fees were shared. During 1950, McEwan telephoned respondent about some clients who had some money they were afraid to try to spend. The money was new currency in original bundles. The clients were ex-convicts who offered to pay McEwan a fee they owed him and desired his assistance in exchanging the new money for other forms which they would not be afraid to spend. After expressing some fears and reservations, respondent went to a bank with McEwan, introduced him to a bank official and was present when the money was examined and discussed. The bank made the desired exchange.

Subsequently, on October 6, 1950, Dobyns-Taylor Hardware Company filed suit against the ex-convicts, the bank, the bank official, McEwan and respondent to recover $25,471.94 taken from complainant's employee at gun-point by the ex-convicts and subsequently exchanged as narrated above.

After trial upon the merits, the court awarded judgment against respondent and others for $10,000.00 less a credit of $1,350.00 payment by McEwan, plus certain interest.

Upon appeal, this Court affirmed the foregoing decree, except that it reversed a finding of fact of the Chancellor and held that respondent did in fact receive one half of a $2,500 fee for procuring the exchange of currency.

On April 17, 1959, the Supreme Court denied certiorari.

On September 29, 1959, the Tennessee Bar Association filed a disbarment proceeding against respondent based upon the facts of the Dobyns, or "hot money" case.

After trial, the bill for disbarment was dismissed by a decree which included the following:

> This Court assumes that the Tennessee Bar Association through its proper representatives made a thorough investigation of the conduct and practices of the defendant, Harry Berke during his long experience as a member of the Bar, yet no charge was leveled against him, except the one instance or transaction that has harassed him for almost a decade, and has cost him a great deal of money, as well as social and professional embarrassment, so that the Court feels that he has more than paid for any error of judgment, or negligence that may have resulted in a civil judgment being rendered against him.

During the trial of this case, respondent was asked about other accusations against him and he answered in the negative, in spite of the fact that the Dennard accusations were pending against him in Chancery Court at the time.

Upon appeal by Tennessee Bar Association, the foregoing decree was affirmed by this Court in an opinion reported as Tennessee Bar Assn. v. Berke, 48 Tenn.App. 140, 344 S.W.2d 567 (1960), which decree includes the foregoing quotation from the Chancellor's decree.

Certain events occurred in connection with the foregoing litigation which are worthy of note.

Respondent relates that, after the Dennard case was concluded and shortly after the present proceeding was instituted, Irma Dennard accidentally met him in an airport terminal and stated she wished to talk to him and he agreed to see her at any time at his office. Later Irma ap-

peared at respondent's office at a time when he was conferring with his attorney about the present disbarment case. In the presence of respondent and his lawyer, Irma gave a written statement, verified before a notary public, wherein she retracted her testimony in the Dennard case in regard to respondent's knowledge of the interest of her parents in the Baldwin Street property. This affidavit was offered in evidence in the present case and excluded, but preserved in the bill of exceptions.

In the "hot money" case, McEwan testified to facts highly prejudicial to respondent. In the resulting disbarment case (Tennessee Bar Assn. v. Berke), respondent produced a witness who testified that McEwan had told him that his former statements were untrue. McEwan expired shortly after this alleged retraction.

In the "hot money" case, William M. Hughes, secretary of the Board of Governors of the Chattanooga Bar Association, testified that respondent had admitted to a bar association board or committee that he went to the bank with McEwan. In the ensuing disbarment case (Tennessee Bar Association v. Berke), the same William M. Hughes testified that he was mistaken in his former testimony, that respondent had not made such an admission.

The retractions of testimony by McEwan and Hughes are referred to in the opinion in Tennessee Bar Association v. Berke, supra.

Contrary to the second version of the Hughes testimony, respondent now admits in his own testimony in the present case that he did in fact go to the bank with McEwan and did take part in some of the discussion there.

The foregoing instances of changing testimony will be referred to hereafter.

The first three assignments of error are as follows:

"1. The Court was in error in allowing introduction of opinions, findings of fact, and decrees in the following cases: Dennard v. Berke, Chancery Court and Court of Appeals; Tennessee Bar Association v. Berke, Chancery Court and Court of Appeals; Dobyns-Taylor Co. v. Berke, Chancery Court and Court of Appeals.

2. The Court was in error in allowing the following records in evidence: Dennard v. Berke, Chancery Court and Court of Appeals; Tennessee Bar Association v. Berke, Chancery Court and Court of Appeals; Dobyns-Taylor Co. v. Berke, Chancery Court and Court of Appeals.

3. The Court erred in admitting the record in the case of Dennard v. Berke, which included the testimony of Irma Dennard, and then failed and refused to allow the Sworn Court Reporter's Statement, (taken on Dec. 2, 1965), as evidence going to the credibility of the sole, principal witness in the case of Dennard v. Berke."

In State v. Bomer, 179 Tenn. 67, 162 S.W.2d 515 (1942), the grounds of disbarment were unjustified and malicious prosecution of disbarment suits against two other lawyers. The fact of the filing, manner of prosecution and disposition of the prior disbarment actions were proven by the records in said cases. The following is found in the Bomer opinion:

"In determining the question of malice, it is proper for the Court to consider the entire record, including

the bill and answer, as well as attending circumstances. * * *

* * * * * *

* * * This proceeding is in no sense a review of the decrees rendered in the Boyd and Gerber cases. The question for consideration in the instant case is, whether or not the charges made in these cases were false and malicious, made without investigation and without probable cause.'' 179 Tenn. at 79, 162 S.W.2d at 521.

In Tennessee Bar Association v. Berke, 48 Tenn.App. 140, 344 S.W.2d 567 (1960) we find:

''Complainant predicates its cause wholly upon two decrees rendered against the defendant, (1) the opinion of the Chancery Court of Knox County, Tennessee, wherein the defendant was found guilty of gross negligence in exchanging Nine Thousand Nine Hundred and No/100 ($9,900.00) Dollars of new money for old, the new money having been stolen from Dobyns-Taylor Hardware Company, located at Kingsport, Tennessee, and (2) the opinion of the Court of Appeals of Tennessee, Eastern Division, rendered on November 28, 1958, wherein that Court affirmed the judgment of the Chancellor in the Knox County Chancery cause, but further held that the defendant, Harry Berke, had been paid a substantial fee as a remuneration for his part in a conspiracy to conceal the identity of the money, which opinion and judgment of the Court of Appeals became incontestable on or about the 8th day of April, 1959, when the Supreme Court of Tennessee denied the writ of certiorari. 48 Tenn.App. at 142, 344 S.W.2d at 568.

* * * * * *

* * * The rule is that records,—that is pleadings and proof in cases in which an attorney appeared either as an attorney or as a party—can be offered in evidence to the extent they are relevant to the issue of fitness to practice, but that such records and judgments are not res judicata and do not necessarily work an estoppel in a subsequent disbarment suit." 48 Tenn.App. at 147, 344 S.W.2d at 570.

* * * * * *

Referring to State v. Bomer, and Court further said:

"* * * Upon Bomer's objection to the introduction of the decrees of the Chancery Court in the suits which he had filed against the two attorneys (which decrees recited the suits were without merit), our Supreme Court said that such decrees could be received in evidence, *not as conclusive proof of the charges against Bomer, but only as evidence in the case, to show the result of the prior trials,* and in that case the recitation in the decrees that the suits were without merit, was not taken as foreclosing that issue to Bomer and other proof in regard thereto was offered by him and heard." 48 Tenn.App.at 150, 344 S.W.2d at 571.

In Tennessee Bar Association v. Freemon, 50 Tenn. App. 567, 362 S.W.2d 828 (1961) this Court held inadmissible the testimony in a former case to which the accused attorney was not a party, and said:

"To sustain the action of the Chancellor in admitting the testimony of Mrs. Spinks as evidence in this case the Bar Association relies most strongly upon the leading case of Re Santosuosso, 318 Mass. 489, 62 N.E.2d 105, 161 A.L.R. 892. That case involved an inquiry into the professional conduct of Attorney

Santosuosso. As the opinion points out, it was not a truly adversary proceeding but an information asking not for disbarment or other disciplinary action but rather for such action as the court might deem proper. But, we think, *a more acute distinction* lies in the fact that the evidence admitted was contained in the transcript of evidence in a *case to which Santosuosso was a party,* in which he appeared in person and by counsel and cross examined the witnesses against him and in which there was an adjudication of misconduct personal to him from which he could, if he chose, appeal. (emphasis supplied) 50 Tenn.App. at 572, 362 S.W.2d at 831.

\* \* \* \* \* \*

It thus appears that there was a finding in the former case that the attorney had been guilty of conduct justifying the disbarment. There was no such finding in the present case.'' 50 Tenn.App. at 573, 362 S.W.2d at 831.

In Schoolfield v. Tennessee Bar Association, 209 Tenn. 304, 309, 353 S.W.2d 401 (1962) the Supreme Court affirmed a disbarment decree and said:

''In the trial court the complainants relied upon the record of the impeachment proceedings in the State Senate \* \* \*.'' (p. 306, 353 S.W.2d p. 402)

''It is not what the defendant *says* he was convicted of, but what the convictions were *actually* for, that brought about this disbarment proceeding.'' p. 307 of 206 Tenn., p. 402 of 353 S.W.2d.

''Defendant contended that his acts as a judge should not disqualify him as a member of the Bar. He contends there is a conflict between the holdings of the Court of

Appeals in this case and holdings in two other recent cases.'' pp. 308, 309 of 206 Tenn., p. 403 of 353 S.W.2d.

''There is no conflict with the decision in [Tennessee] Bar Association v. Freemon (Court of Appeals, Middle Section, June, 1961) because there Freemon was not even a party to the divorce action which was one of the grounds of the disbarment petition.

The case of [Tennessee] Bar Association v. Berke, [48] Tenn.App. [140], 344 S.W.2d 567, is not in conflict with the case here, or the Freemon case, because that disbarment proceeding was predicated on a judgment of a court in a civil case for money damages, and the opinion of the trial court, and the Court of Appeals in that case clearly indicated that the basis of the dismissal of the case was due to the fact that the defendant had been punished enough.

\* \* \* \* \* \*

Nor did the Court of Appeals overlook the testimony of character witnesses, but, as Judge Avery observed in his separate concurring opinion, 'it mattered not who and how many persons might testify as to their opinions of the defendant's character; that issue had been established by the finding of the Court of Impeachment.

\* \* \* \* \* \*

The defendant has had a long and public trial before the Court of Impeachment, in which he was convicted of charges involving moral turpitude. Based upon this record the Chancery Court entered a decree permanently disbarring the defendant from the prac-

tice of law in Tennessee." 206 Tenn. at 315, 353 S.W.2d at 403.

As we read the foregoing cases, the rule in Tennessee has been declared as follows:

(1) If an attorney is accused of misconduct in handling a case, then any part of the record of that case which evidences that misconduct or its circumstances is admissible. (State v. Bomer)

(2) If an attorney is accused of conduct which conduct he has denied and litigated in another proceeding, the final judgment in the former proceeding is conclusive of the conduct charged therein. In a disbarment proceeding based upon the same conduct, the question is whether the previously adjudged conduct merits disbarment; and other evidence, including testimony in the former proceeding, where competent, is admissible to shed light upon the culpability of the conduct for the purpose of disbarment. (State v. Bomer, Tennessee Bar Assn. v. Berke)

(3) The nature of judicial impeachment is so identical to that of disbarment that a judgment of impeachment may preclude further inquiry, even into circumstances or character of the accused. (Schoolfield v. Tennessee Bar Assn.)

We are of the opinion that the final decree in the Dennard case was conclusive upon the issues therein litigated; i. e., overcharges for usury and attorneys fees and fraudulent transfer of title, and was admissible for the purpose of showing the conclusion of such issues.

Any actions or conduct of the respondent occurring *during the litigation of that case* which were

relevant to the issues in this present case (i. e., his admissions as a party to this case) are properly shown by the record in that former case. Any part of the record, opinions, pleadings, or testimony in the former case which would shed light upon the scope or meaning of the final judgment or serve as circumstantial background of the conduct of respondent *during the proceedings* would also be proper for consideration. Otherwise, we consider the record in the Dennard case to be immaterial.

Likewise, in the case of Tennessee Bar Association v. Berke, the final decree is competent evidence of the conclusion of the case favorably to respondent, and the record therein is competent to show the scope of the decree, relevant acts and admissions of respondent during the proceedings and the background thereof, but not otherwise.

Likewise in the case of Dobyns-Taylor v. Berke, the final decree is competent evidence of the conclusion of the case, i. e., that respondent was held liable in tort, and the record therein is competent to show what kind of case produced the judgment, relevant acts or admissions of respondent during the proceedings and the background thereof, but not otherwise.

 The trial court properly permitted respondent to offer any competent evidence in explanation, mitigation, justification or otherwise in an effort to convince the court that the previous conclusions of the other cases should not be grounds of disbarment under the circumstances.

 The hearsay rule does preclude the consideration of testimony in a previous case for the purpose of showing the truth of the facts referred to in such testimony.

If the petitioners could have the benefit of testimony thus preserved to prove petitioner's case, then respondent would likewise be entitled to the benefit of all such testimony in his favor, and the court in this case would simply be re-trying the issues of the previous case, contrary to the expression of State v. Bomer supra. The rule is, therefore, that testimony in previous cases is inadmissible, except under some exception to the rule.

Parts of the testimony in the previous cases were admissible under the rules referred to above; i. e., admissions and conduct of parties, circumstantial background of same, interpretation of scope of decree.

▮ The pleadings were admissible to the extent necessary to form the background for the decrees, and as the acts and admissions of respondent, but not otherwise.

▮ The admission of improper evidence of a fact in issue is harmless where the verdict or judgment is supported by sufficient competent evidence, Gardner v. Burke, 28 Tenn.App. 119, 187 S.W.2d 25 (1945), Erwin Nat. Bank v. Riddle, 18 Tenn.App. 561, 79 S.W.2d 1032 (1934), or where the fact is undisputed. Marable v. State ex. rel. Wackernie, 32 Tenn.App. 238, 222 S.W.2d 234 (1949), Knoxville Iron Co. v. Pace, 101 Tenn. 476, 48 S.W. 232 (1898), American Trust & Banking Co. v. Fairbanks, 5 Tenn.App. 296 (1927).

▮ This cause comes to this Court for trial de novo, which means that all the evidence must be reviewed. In so doing, this Court has the opportunity to review the admission and exclusion of evidence by the trial court. Any evidence improperly admitted by the trial court is excluded from consideration by this Court in weighing the evidence. For this reason, any error made by the trial

court in admitting and considering incompetent evidence is harmless if there is adequate competent evidence in the record upon which to base the conclusions of the trial judge and our concurrence therein.

Except as indicated, respondent's first and second assignments of error are respectfully overruled.

 This third assignment of error also complains of the exclusion of the affidavit of Irma Dennard which retracts, or contradicts part of her previous testimony in the Dennard case.

The previous testimony of Irma Dennard was not admissible to prove the facts of the Dennard case because the decree in the Dennard case had conclusively determined such facts in so far as the issues in that case were concerned. There was no need or occasion to impeach the testimony which was not proper for consideration, hence no need to admit the contradictory affidavit.

 An additional and compelling reason for the exclusion of the affidavit rests in the peculiar events which produced the conviction of Irma for contempt and her present separate appeal to this Court.

As previously suggested, the original petition in this cause was amended to allege facts and offenses related to the obtaining of Irma's retraction affidavit. She was summoned to testify on the subject. She claimed the protection of the fifth amendment of the U. S. Constitution. She was fined and sentenced for contempt for refusal to testify. The amendment to the petition was dismissed.

If a witness can make an extra-judicial statement, then refuse to repeat that statement in open court, and thereby

force the court to accept the extra-judicial statement as evidence, then our rules of evidence and judicial process have been supplanted by the caprice of witnesses. We agree with the trial court that such trifling with the processes of the court cannot be countenanced, and that an affidavit thus produced and offered should not be admitted in evidence.

Nevertheless, since the affidavit has been preserved, it has been examined to be sure that fairness and justice have prevailed in this matter. We have concluded that even if the affidavit were considered, the result would not be otherwise. The only material statement in the affidavit is that respondent knew nothing of the interest of her parents in the Baldwin Street property. This retraction affected only part of the Dennard decree.

Respondent's third assignment of error is respectfully overruled.

Respondent's fourth assignment of error is reserved for discussion at the conclusion of this opinion.

The fifth assignment of error is as follows:

"Even if the *RECORD* embodying the testimony of Irma Dennard was admissible in evidence, the Court failed to disregard her entire testimony when she invoked the *FIFTH AMENDMENT*. In view of the Chancellor's ruling and instructions to her, it became clear that her evidence in *DENNARD v. BERKE* was inconsistent with the truth."

We have already indicated that the record of the testimony of Irma Dennard should not have been considered by the trial court, and has not been considered by this Court, for the purpose of proving the facts stated

therein. Thus this assignment becomes moot under our view of the case.

██ The circumstance of false or mistaken testimony may be taken into consideration in determining the effect to be given to the previous decree. This was done in Tennessee Bar Association v. Berke, but the previous decree was not nullified. The circumstance of changed testimony was considered along with all other circumstances in making the determination that discipline was not warranted at that time.

The fifth assignment of error is respectfully overruled.

The sixth assignment of error is as follows:

"The Court was in error in holding that the defendant's testimony alone in this case is sufficient upon which to base a finding that he was guilty of charging Irma Dennard a rate of interest on the money loaned her far in excess of the legal rate amounting to usury under the law.

The Court failed to cite any testimony in support of this finding, and the defendant's testimony is absolutely and unmistakably contrary to the Court's finding from the defendant's testimony."

██ The finding complained of is not determinative of the issues in this case, however the opinion is in accord with the previous holdings of the trial and appellate courts on the same issue, and we concur therein. There was and is no real issue of fact in respect to usury. In his testimony in the present case, respondent freely admits the various amounts and manner of his dealing with Irma. The only issue is whether the admitted facts should be interpreted as usury and overcharge, or as legitimate

attorney fee and profit on a business transaction. In the Dennard case, the Chancellor and this Court interpreted the transactions as constituting usury and overcharges. The material facts being admittedly the same, there is no reason why this court should reverse its previous interpretation of the facts. The finding complained of in this assignment does not hold that respondent's own testimony shows him guilty of the *crime* of usury, or of usury under such conditions as to merit *disbarment*. The holding of the trial court is simply a reiteration of a previous final judicial interpretation of facts which were admitted by this respondent in his testimony in this case.

The sixth assignment of error is respectfully overruled.

The seventh assignment of error is as follows:

"There was no relationship of attorney and client, therefore the trial court erred in sustaining the petition to disbar defendant and impose a two year suspension. If the charging of excessive interest were true, this would be a private matter, and not the subject of disciplinary proceedings."

 Whether there was a relation of attorney and client was and is a question of fact. Obviously, the lending of money is not per se the practice of law. The preparation of loan instruments is law business. Ordinarily a borrower who pays an attorney fee for preparation of papers for a loan from a lay person or agency has no confidential relationship with the attorney. Where, however, the loan is from an attorney to a person for whom he has performed confidential legal services and for whom he continues other such services while a series of loan instruments are prepared from time to time, then, in

such a case, there are justifiable grounds for inferring a confidential relationship in some degree. Whether or not the relation is one of attorney and client, it grows out of the attorney client relation, and reflects credit or discredit upon the legal profession according to the integrity of the behavior of the lawyer.

In its broadest sense, the duty of a lawyer is to so regulate his life, public and private, as that no action of his shall reflect unfavorably upon his profession.

The Canons of Professional and Judicial Ethics of the American Bar Association, as adopted by Rule 38 of the Supreme Court of Tennessee provide in part as follows:

"11. Dealing With Trust Property. The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

\* \* \* \* \* \*

22. Candor and Fairness

The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and fairness. \* \* \*

These and all kindred practices are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice.

32. The Lawyer's Duty in Its Last Analysis.

\* \* \* \* \* \*

But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to

public duty, as an honest man and as a patriotic and loyal citizen.''

Section 29-308 T.C.A. provides in part as follows.:

''Grounds for Disbarment or discipline.—Any attorney, solicitor or counselor at law admitted to practice in the courts of the state may be disbarred or suspended from the practice of law—

\* \* \* \* \* \*

(1) Who shall commit or may have committed, any infamous crime or misdemeanor involving moral turpitude.

\* \* \* \* \* \*

(5) Who shall be guilty of any unprofessional conduct, dishonesty, malpractice, or any conduct which renders him unfit to be a member of the bar. [Acts 1919, ch. 42, sec. 1; Shan.Supp., sec. 5781a1; mod. Code 1932, sec. 9974.]''

Our own Supreme Court has declared:

''It is the duty of an attorney to uphold the honor of the profession of law; to be honest, to be of good conduct in the discharge of his duties to the Court, the public and his clients. Attorneys are trusted by the community with the care of their lives, liberty and property with no other security than personal honor and integrity.

The trust and confidence which must necessarily be reposed in an attorney requires him to maintain a high standard of moral character and a due appreciation of his duty to his profession, the courts and the public. He is charged with the duty of good faith and honor-

able dealing on all occasions." Schoolfield v. Tennessee Bar Assn., 206 Tenn. at 312, 353 S.W.2d at 404.

Tennessee Code Annotated also contains the following:

"39-4601. Usury prohibited.—No person shall receive, by way of compensation for the use of money, more than at the rate of six dollars ($6.00) for the use of one hundred dollars ($100) for one (1) year, except as otherwise provided.

39-4602. Punishment for usury. — The punishment for this offense shall be a fine in no case less than ten dollars ($10.00) nor more than the amount of the usury received, to be ascertained by the jury, and in the discretion of the court the person convicted may be imprisoned in the county jail or workhouse for some period of time less than one (1) year. [Code 1858, sec. 4822 (deriv. Acts 1835-1936, ch. 50, sec. 6; Shan., sec. 6733; Code 1932, sec. 11132; Acts 1953, ch. 67, sec. 1; modified.]"

The seventh assignment of error is respectfully overruled.

The eighth assignment of error is as follows:

"The Court erred in holding that, in the former disbarment case, he misled the Court in making the following answer to the following question propounded to him:

COURT: 'You have never been before the Grievance Committee or anybody ever leveled any charges against you?

MR. BERKE: I have never been at the Grievance Committee on any complaint on any matter, ever as a matter of fact since this has come up. I have served

on the Grievance Committee for the Chattanooga Bar Association in the investigation of other complaints.

COURT: All right.'

The undisputed proof showed that the answer was correct, and that Mr. Berke had never been cited before a Grievance Committee on this, or any other, matter. The pendency of the unadjudicated case of Dennard v. Berke was fully publicized and known to petitioners, but the matter had never been aired before any grievance committee as no attorney-client relationship was established requiring grievance procedures."

During his testimony in the present case, respondent admitted that the following was a correct record of the exchange referred to:

"Mr. Wood (Respondent's attorney): Mr. Berke, either before or after this episode have you ever been charged with any sort of unethical conduct by your bar association or any other individual as far as you know,

——(Interruption by Court)

Mr. Wood, continuing: I merely asked that question, your Honor, in an attempt to ask the character witnesses on the theory that this offense, however it may appear to the Court, it is an isolated incidence (sic) of a lawyer of some 30 years standing who has been for one time in error in something that he did and I was just asking that in order to show that he has not through a long course of conduct been even charged with any other conduct.

THE COURT: You have never been before the grievance committee or anybody ever leveled any charges against you?

WITNESS BERKE: I have never been at the grievance committee on any complaint on any matter***.''

Respondent says that he interpreted the Court's question as an inquiry only about complaints to the grievance committee. This insistence of respondent bears some color of logic. We could not convict the respondent of perjury for his answer. Neither could we decorate him for candor. It should have been evident to a casual observer, much more to the respondent, that the Court was preparing to exercise a measure of indulgence, or forgiveness, and was seeking grounds to justify his disposition of the case. Such attitude of the Court is apparent from the previously quoted portion of the decree which was without doubt grounded upon this question and answer. Absolute candor would require a superfluity of disclosure of even the most trivial derogatory matter in order that the Court be fully aware of all material circumstances.

Respondent insist that his troubles with the Dennards were much publicized and should have been known to the court and counsel. The judge who asked the question and decided the case was sitting by interchange from a circuit some distance from the place of trial. Even local publicity known to a local judge should not deter a candid disclosure for the record on appeal to this Court or the Supreme Court.

It is not necessary for this Court to determine whether disbarment is justified by the foregoing lack of candor, for the discipline of respondent must be determined from an overall view of his general attitude toward his duties as a lawyer and his fitness to continue as such.

The eighth assignment of error is respectfully overruled.

The fourth assignment of error which was reserved for discussion at the conclusion of the opinion is as follows:

"The Court was in error in sustaining the petition for disbarment because there was no evidence to support the judgment of the court."

This assignment requires a review of the evidence. Board of Mayor and Aldermen of Covington v. Moore, 33 Tenn.App. 561, 232 S.W.2d 410 (1950). In non jury cases such as this, the judgment of the Trial Court comes to this Court with a presumption of its correctness unless the preponderance of the evidence is otherwise. Sec. 27-303, T.C.A.

The record has been reviewed, not only to ascertain whether there is any evidence to support the judgment of the Trial Court, but also to determine whether the evidence preponderates against the judgment or for any other reason we should disagree with the judgment below.

Respondent, himself, in his own testimony revealed facts and actions which reflect upon his fitness to practice law. Such facts and actions certainly cannot be ignored in a disciplinary proceeding. Respondent freely admits the following:

Over a period of years he conducted dealings with a client which have been ruled usurious and otherwise improper by the courts and publicized in the press.

He participated in the disposition of stolen money in a manner which he considers to be entirely innocent,

but as a result of which the courts have awarded damages against him.

He wrote a letter to and attempted to contact by telephone an adversary litigant represented by counsel, although he admits in his testimony "I couldn't deal with her direct."

He answered a question by the judge in his previous disbarment trial in such a manner that the judge did not receive the needed information, although respondent insists that his lack of candor was innocent and not deliberate.

In addition to the foregoing admissions by respondent, a number of other admitted and uncontradicted circumstances are worthy of note.

Two witnesses in the Dobyns Case (McEwan and Hughes) strangely reversed their testimony when the resulting disbarment suit developed.

After the Dennard case, and the beginning of this disbarment case, a witness (Irma Dennard) strangely signed a retraction of her testimony.

Character witness offered in rebuttal of respondent's character witnesses testified he was unworthy of belief under oath and that in his cases "the facts will not stand still".

No human can honestly claim perfection or freedom from fault or mistake. Lawyers are no exception, but are obligated to a higher ethical standard than the average citizen.

Former charges against lawyers which have been rejected by the courts should not remain for considera-

tion in future cases. However, in the absence of exoneration, former misconduct must remain a part of the professional record to be considered as part of the evidence of professional fitness or unfitness.

A single act of misconduct or indiscretion may not alone justify discipline, but where discipline is not ordered for the single act, such act may later combine with subsequent acts to justify a judgment of unfitness and discipline.

We recognize that respondent has reasons, excuses, justifications and denials which satisfy himself that he is completely faultless and undeserving of discipline. It is remotely possible that his every defense is correct and justified; but this possibility is so unrealistic and remote, and the evidence and inferences so strongly support the disposition made by the trial court, that we are amply satisfied to concur in all of the findings and conclusions of the trial judge and to affirm his decision.

In making our conclusions, we have first considered the testimony of respondent alone. From it, we are satisfied of the correctness of the judgment.

We have also considered other evidence of unquestionable competency, relevancy and materiality. By it, our decision is reinforced.

We have considered all evidence offered by respondent, whether admissible or not. It does not shake our approval of the judgment of the trial judge.

Commendation is extended to all who made a contribution to the orderly, dignified handling and just disposition of this matter.

The decree of the trial court is affirmed with costs.

Affirmed.

Shriver and Puryear, JJ., concur.