DISCIPLINARY BOARD OF the SU-
PREME COURT of Tennessee,
Plaintiff-Appellee,

v.

James L. BANKS, Defendant-Appellant.

Supreme Court of Tennessee,
at Knoxville.

Oct. 25, 1982.

Paul Campbell, Jr., Douglas M. Campbell, Chattanooga, for defendant-appellant.

Ronald L. Davis, Lance B. Bracy, Nashville, for plaintiff-appellee.

OPINION

HARBISON, Justice.

Appellant, a licensed attorney, appeals from an order imposing a suspension from practice for professional misconduct. We find that the record supports the findings of fact and conclusions of law of the trial judge and of an earlier hearing panel. However, because of mitigating circumstances, we modify the period of suspension.

Appellant was licensed to practice law in this state in 1958 after graduating from an accredited law school. He entered the general practice a year later and has practiced continuously since that time, concentrating largely in the area of collections and commercial law. He has also engaged in outside businesses, particularly the purchase, sale and development of real estate.

For several years prior to September 24, 1973, appellant had known and had represented Mrs. Nellie James, who was a distant relative of his wife. Mrs. James owned and managed several pieces of rental property, and appellant from time to time did legal work for her. He continued to do so after the date above mentioned. However, he was not actually handling any legal affairs for her at the time he entered into a financial transaction with her on that date.

In March 1973, Mrs. James had mentioned to appellant that she planned to sell some real estate and that she would like to invest the proceeds at the best possible interest rate. Mr. Banks testified that he mentioned to her at that time that he was engaged in some business ventures requiring capital and that he was paying ten percent per annum for borrowed money.

Six months later Mrs. James closed the sale of her real estate without the assistance of appellant. She netted $55,000, part of which she needed to pay capital gains taxes. She wished to retain $10,000 for herself. She took the check to appellant,

which he deposited into his attorney's trust account. He disbursed to her those funds which she wished to receive at that time, and retained $38,000.

Appellant prepared and both parties signed the following document:

"MEMORANDUM AGREEMENT

"This agreement is entered into this 24th day of September, 1973, by and between James L. Banks and Nellie James.

"It is agreed that Nellie James will deposit with James L. Banks, Attorney, the sum of Thirty-Eight Thousand ($38,-000.00) Dollars to be invested by him for her upon terms agreed upon by her and written notes and security agreements to be furnished within five (5) days.

"Acknowledgment is made by James L. Banks of the receipt of said sum of money."

A little over two weeks after the date of this transaction appellant opened a separate savings account in his name as trustee for Nellie James in the amount of $27,500. Apparently he retained the balance in his general trust account. By November 10, 1973, however, he had disbursed all of the funds in the savings account and apparently also the balance in his general trust account, loaning these funds to two business corporations in which he was controlling stockholder and principal investor. One of these was an equipment company and the other was engaged in the construction of some apartment buildings near Chattanooga.

At no time during the next six years did appellant furnish Mrs. James with any records of these investments, nor was she ever told specifically where her money had been invested. The terms of the memorandum agreement were not kept by appellant, as he acknowledged before both the hearing panel and the trial judge. Nor did he offer any excuse or satisfactory explanation for his failure to do so. Apparently he did take some notes, covering part of the funds, from the business ventures which borrowed the funds, but these notes were never delivered to Mrs. Banks, nor had she ever seen them prior to the hearing of this matter.

At all times it has been the contention of appellant that the transaction of September 24, 1973, represented an outright loan to him of the funds of Mrs. James. He stated that he agreed to pay her ten percent per annum on these funds, and it has been his view that he was entitled to use the funds in an unrestricted manner and to invest them as he pleased, so long as he was accountable for them. It has been his contention that he simply drafted the memorandum agreement inartfully and that it did not express the true intention of the parties.

Both the hearing panel and the trial judge found that this contention was not sustained by the preponderance of the evidence, and we agree. Both Mrs. James and her daughter testified that they understood that Mr. Banks was to handle these funds for Mrs. James as her attorney, to account to her for them, to present her with notes or security agreements and to invest them upon terms agreed to by her. They testified that over the ensuing years Mrs. James asked him on several occasions about the investment of the funds and always received evasive answers. Mr. Banks denied receiving many inquiries, but did admit that there had been some questions made to him. He regarded himself as solely accountable and liable for the funds, and never at any time denied owing them to Mrs. James.

In 1974, the first year after the transaction was consummated, Mrs. James needed $4000 of the funds, and upon request Mr. Banks promptly paid this amount to her. Thereafter he or someone in his office filled out her income tax returns, and each year she was advised that she had received and must report taxable income on the remaining balance at the rate of ten percent per annum. No interest was actually paid to Mrs. James; and Mr. Banks told her that he had "reinvested" the interest for her.

Finally, in the early part of 1979, Mrs. James needed the funds in order to finance the construction of a commercial building. She and her daughter had conversations with appellant, and he assured them that he would be able to produce the funds during

the spring or summer. He was in fact negotiating for the sale of the apartment buildings, in which the bulk of the funds had been invested, but the sale was not consummated. In the meanwhile, acting on the strength of his assurances, Mrs. James and her daughter commenced the construction of their building and incurred substantial financial obligations as a result.

When appellant was not able to produce the funds for Mrs. James, she and her daughter had to mortgage property and to borrow funds from other sources. Acknowledging his responsibility, appellant did pay to the lending institution extra interest charges which were incurred by Mrs. James.

Mrs. James became extremely angry with appellant for not producing her funds as promised. It appears that from and after July 1979 she would not speak with him or have any direct communication with him. Her daughter did continue to contact him, as did another attorney employed on behalf of Mrs. James by members of her family. Finally, after demand upon appellant, he wrote the following letter to Mrs. James, dated September 12, 1979:

"Re: Investment Account

"Dear Nellie: This memorandum is a confirmation of the status of your investment of $38,000.00 which I invested for you on September 24, 1973. Besides the $38,000.00 original investment there is a total of $21,303.08 in interest which has accrued less $4,000.00 that was paid to you on April 15, 1974, plus the interest earned thus far in 1979 at a rate of 10%.

"I agree to pay the amount of $55,303.08 plus the interest due on this amount for 1979 at a rate of 10% per annum at the earliest possible time but no later than October 31, 1979."

"In addition, I shall also pay all extra monies and fees required to finance the building construction now in progress at 5906 Cassandra Smith Road incurred by your daughter Frances Kamin."

When Mr. Banks was unable to produce the funds on October 31, 1979, Mrs. James, on November 15, filed suit in chancery court. On February 1, 1980, appellant filed an answer admitting liability for the funds received from Mrs. James. Early in April 1980 he sold a piece of commercial property and arranged a financial settlement with Mrs. James. Her suit against him was then dismissed, but she incurred a substantial attorney's fee in order to obtain restitution of her funds. All claims by Mrs. James against appellant have now been compromised and settled, and he has no further legal liability to her.

A complaint was filed against appellant before the Disciplinary Board [1] while the chancery action was pending. The matter was heard before a hearing panel after he had arranged a settlement with Mrs. James. Part of the settlement involved his giving a promissory note to her, and by the time the disciplinary proceedings reached the trial court the parties had settled his liability on that obligation.

The hearing panel found that appellant was acting in his professional capacity as an attorney when he received the funds from Mrs. Banks, and that the matter was not merely an outright personal loan to him as he has contended. The evidence supports this conclusion. The hearing panel found that the appellant violated the Code of Professional Responsibility, especially DR 5–104(A) as follows:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure."

The trial judge affirmed, and we also affirm that finding.

There was also a finding that appellant violated DR 1–102 in several respects, especially subsections 4 and 6, which provide that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation or engage in any other con-

1. Now designated Board of Professional Responsibility.

duct that adversely reflects on his fitness to practice law. We concur with the trial judge in affirming that conclusion. Also found to be violated was DR 9–102(B) providing that a lawyer shall

"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.

\* \* \* \* \* \*

"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

"(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

The record clearly supports the findings of the trial judge and of the hearing panel that violations of the foregoing provisions of the Code of Professional Responsibility occurred. There were others found by the hearing panel which are more marginal and are not as clearly sustained by the record, but the foregoing are sufficient to justify the imposition of a suspension from the practice of law.

It appears that in 1965, some years prior to his transaction with Mrs. Banks in 1973, appellant was reprimanded and fined by the United States District Court for unprofessional conduct. He had been appointed receiver of an insolvent business, and trust funds had come into his hands in that capacity. He loaned these funds to a corporation in which he was financially interested and was a major stockholder. Orders of the federal court regarding that transaction were filed in the present record.

It thus appears that not only was appellant guilty of professional misconduct in the handling of the James transaction in 1973; he had been guilty of the same type of misconduct and conflict of interest in an independent proceeding a few years earlier. Clearly the hearing panel and the trial judge were warranted in imposing more than a simple reprimand in this case.

On the other hand, there are some mitigating circumstances in favor of appellant. We are convinced, as apparently were the tribunals below, that he never at any time intended to embezzle the funds of Mrs. James or to convert them to his own use. At all times he acknowledged his responsibility for them and his indebtedness to her. The record indicates that he did make a good faith attempt to sell his apartments in the spring of 1979 and to refund her money to Mrs. James, as he testified. He paid extra interest and fees which she had to incur in making other financial arrangements in 1979, and in his letter of September 12 he freely and openly acknowledged his indebtedness to her. He likewise did so in the chancery court. His apartment venture went through a period of financial distress, and only by extraordinary effort was he able to salvage it. In addition appellant has been seriously ill for the past several years, has undergone major surgery and has had difficulty in attending to his practice and his business interests.

None of these circumstances justifies his professional mishandling of trust funds. In our opinion, however, a suspension of one year would be sufficient under all of the circumstances, and the judgment will be modified to that extent. Counsel for the parties shall agree upon the beginning date for such suspension as soon as practicable after the release of this opinion; if they are unable to agree, the Court will fix the date.

One of the principal issues raised on appeal by counsel for appellant pertains to the admission of the record of his reprimand and fine in the federal court in 1965. It is insisted that these records were inadmissible and violated the evidentiary rule approved by this Court in *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976). The *Morgan* case, however, involved proof of prior criminal convictions by a person on trial for criminal charges where the sole purpose of the evidence was to impeach the accused or to attack his credibility. The evidence in the present case was not offered for that purpose. It was offered, received and con-

sidered by the hearing panel and by the trial court to show appellant's previous professional misconduct and his awareness of the impropriety of investing trust funds in personal business interests. It bore upon the issues of his culpability and the degree of punishment to be imposed if the present charges were sustained. It was clearly admissible for that purpose and was properly considered by both tribunals below. *See Berke v. Chattanooga Bar Association,* 58 Tenn.App. 636, 436 S.W.2d 296 (1968). There it was held:

> "Former charges against lawyers which have been rejected by the courts should not remain for consideration in future cases. However, in the absence of exoneration, former misconduct must remain a part of the professional record to be considered as part of the evidence of professional fitness or unfitness." 58 Tenn. App. at 665–666, 436 S.W.2d at 309.

■ Equally without merit is the complaint made by counsel for appellant of a pre-trial order entered by the hearing panel in the proceedings before it. On September 8, 1980, the panel gave notice of a pretrial conference to be held on September 25. The conference was held, and an order was entered on October 1, 1980, listing exhibits to be filed by the parties and names of witnesses which each party expected to call. Both appellant and the Disciplinary Board listed the names of Mrs. James and her daughter, Mrs. Kamin, as prospective witnesses. Dates for discovery depositions were scheduled and agreed upon. Included in the pretrial order was the following paragraph:

> "(5) The parties have indicated the nature of the testimony of the above witnesses and therefore adversary counsel shall not contact any of the above witnesses except by way of discovery depositions with notice to the adversary counsel."

Apparently counsel for appellant construed this order to prohibit them from consulting with either Mrs. James or Mrs. Kamin prior to the giving of their depositions. The order does not so state. Appellant listed these persons as his own witnesses, as did the Disciplinary Board, and in our opinion counsel for either of the parties was free to meet with these witnesses for informal discussion or interview prior to the giving of their depositions.

In all events, no objection was made before the hearing panel when this order was entered. Discovery depositions were taken by counsel for appellant from both Mrs. James and Mrs. Kamin a month later. In addition, the record shows that Mrs. James had positively refused to meet with Mr. Banks or to have any discussions with him since 1979 and that she felt that he had badly mishandled her funds. No prejudice to appellant or his counsel appears or can be deduced from counsel's not interviewing Mrs. James or Mrs. Kamin prior to deposing them for discovery. In addition both witnesses testified fully before the hearing panel and again at the trial in the circuit court. We find the issue to have no merit.

We have examined all of the other questions raised by appellant, have carefully studied the record, and are satisfied that the issues were properly decided by the hearing panel and the trial judge.

The judgment of the trial court, as modified herein, is affirmed at the cost of appellant.

FONES, C.J., and DROWOTA, J., concur.

COOPER, J., dissents.

BROCK, J., not participating.