IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 11, 2001 Session

## STATE EX REL ALICE ELIZABETH DURRANT v. EDWIN BRITTAIN HOWARD, II

**Direct Appeal from the Juvenile Court for Knox County**
**No. E0458     Hon. Carey E. Garrett, Judge**

**FILED SEPTEMBER 20, 2001**

**No. E2000-02072-COA-R3-CV**

In this custody dispute, the Trial Court gave custody to the father.  The mother appealed.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Jonathan A. Moffatt, Knoxville, Tennessee for Appellant, Alice Elizabeth Durrant.

Wanda G. Sobieski, Diane M. Messer, and Nanette J. Landen, Knoxville, Tennessee for Appellee, Edwin Brittain Howard, II.

## OPINION

In this custody dispute over twins born to the parties on September 10, 1997, the Trial Court awarded father custody and the mother has appealed.

This action originated when the mother filed a complaint to establish parentage and set support.  The father responded that he had already filed an action to legitimate the twins and that he wished to legitimate the twins and was seeking custody of the twins.

Subsequently, a Parentage Order legitimating the twins was entered, temporary custody was awarded to the mother, child support set in accordance with the guidelines, and the father was ordered to provide insurance.

Evidence on the issue of custody was offered in a prolonged trial, and the Court, after taking the case under advisement, entered an Order finding that an initial custody determination was required, and that the comparative fitness test applied. The Court found that mother had limited father's access to the twins "as much as possible" and that her behavior had created a "substantial obstacle" in father's relationship with the twins. The Court found the mother often had other people watch the twins when the father was available and "begging" for more time with them. The Court found the mother had been hospitalized for mental illness issues, including depression, and the mother had "repeatedly refused to enter and complete treatment" even though it had been prescribed. The court also found the mother had denied a need for treatment. The court concluded that the father's testimony was credible, and that he was a dedicated and stable father, with an "exemplary" parenting record, and that it would be in the twins' best interests to be in their father's custody.

The Court ordered that the father would have custody, and the mother a "reasonable visitation schedule" as agreed by the parties "allowing as much time with the mother as her work schedule permits."

The mother raises these issues on appeal:

1. Whether the referee erred in admitting medical/psychiatric records related to mother, permitting questioning of the guardian ad litem regarding such records, and considering statements from the records in rendering the judgment?

2. Whether the referee erred in applying a comparative fitness analysis in this case?

3. Whether the evidence preponderates against the referee's award of custody to father?

The mother argues that the Court erred in admitting her medical/psychiatric records in evidence, and in permitting the guardian ad litem to testify about them. Mother alleges that the records were irrelevant, were hearsay, and were not properly authenticated.

As to the relevance of the records, it is clear that both the legislature and the courts have recognized that the mental health of a parent is a factor to be considered in making a custody determination. Tenn. Code Ann. §36-6-106; *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983.) As to the mother's argument that the records were not properly authenticated, it does not appear that mother's counsel actually raised this objection at trial. Counsel objected on the basis of relevance and objected on the basis of hearsay. Because this objection was not raised at trial, it cannot be

raised for the first time on appeal. Tenn. R. App. P. Rule 36.

However, we conclude that the records constitute inadmissible hearsay. The statements contained in the records are clearly out of court statements, and the persons who made the statements did not testify at trial. The statements appear to have been offered for the truth of the matters asserted (and not just to impeach the mother's testimony.) Moreover, the records and the statements contained therein do not fit within any of the defined hearsay exceptions. It was therefore error to admit these statements. Tenn. R. Evid. 801-803.

We conclude, however, that the admission of the records was harmless error, given the abundance of other proof regarding the mother's emotional instability. The mother testified she had problems with depression in the past and had been prescribed medication and ongoing therapy, but that she had not followed through with either treatment. There was testimony from Dr. Vey Nordquist , a clinical psychologist, who had performed custody evaluations in the case. He had administered psychological tests, but he felt that observation of and interviews with the parents were better indicators. He testified regarding the mother's previous mental health history at great length. Numerous other witnesses testified regarding the mother's mood swings, anger, violent outbursts, and temper problems. "The admission of improper evidence of a fact in issue is harmless where the verdict or judgment is supported by sufficient competent evidence." *Berke v. Chattanooga Bar Ass'n*, 436 S.W.2d 296, 304 (Tenn. Ct. App. 1968).

The mother argues that the proper standard which the Court should have applied in making its custody determination was whether there had been a change in circumstances, since Tenn. Code Ann. §36-2-303 states that the custody of a child born out of wedlock is automatically with the mother. The Trial Court found that it was required to make an initial custody determination, and thus applied the comparative fitness test. This was proper, because there was no previous decree as to custody. We have previously ruled that the changed circumstances standard cannot be invoked absent a prior judicial determination regarding custody. *Gillenwaters v. Gillenwaters*, 1999 WL 893889 (Tenn. Ct. App. Oct. 13, 1999); *Smith v. Smith*, 1989 WL 139726 (Tenn. Ct. App. Nov. 16, 1989.) *Also see, e.g.*, *In re Price*, 1997 WL 338588 (Tenn. Ct. App. June 20, 1997). We conclude it was proper to apply the test to the facts of this case.

Finally, the mother argues that the evidence preponderates against the Trial Court's award of custody to the father. The standard of review of an initial custody determination is "*de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." *Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). Furthermore, because custody decisions are factually based and often are determined by the credibility of the testimony, the appellate courts are hesitant to reverse the trial courts' decisions because the trial judge was able to observe the witnesses and judge their credibility. *Adelsperger v. Adelsperger*, 970 S.W.2d 482 (Tenn. Ct. App. 1997).

It is well-settled in this jurisdiction that in custody cases, the "welfare and best interests of a child are of paramount concern." *Koch v. Koch*, 874 S.W.2d 571 (Tenn. Ct. App.

1993).  To determine what is in the child's best interests, courts are instructed to look at numerous factors, as set forth in Tenn. Code Ann. §36-6-106.  Moreover courts are instructed to apply the doctrine of comparative fitness, such that neither party must be deemed unfit, but rather the two possible custodians should be compared and a judgment made regarding who is more fit. *See Koch*.

It appears that the twins were emotionally connected to and loved both parents, and the parents love the children.  Both parents work and can provide for the children, and have in fact done so, and the mother had been living with the children, so continuity is a factor in her favor.  But her own instability and lack of proficiency at keeping her job situation and home life steady mitigates against her having custody.  Both parents have family, but father is the only parent with family in the area who regularly interact with the children. Both parents appear to have good physical health, but the father has a better mental health status than the mother, given the evidence about her angry outbursts, violence, mood swings, and desertion of her children, and the like.  There was also evidence the mother physically abused her children, and that she was somewhat neglectful.

Accordingly, we conclude that the evidence does not preponderate against the Court's determination of custody.  The Trial Court had the opportunity to observe the "manner and demeanor" of the witnesses who testified, and the "weight, faith, and credit to be given to witnesses' testimony lies in the first instance with the trier of fact", such that the credibility attached should be given great weight by the appellate court. *Whitaker v. Whitaker*, 957 S.W.2d 834 (Tenn. App. 1997). "Nowhere is the presumption of correctness of the trial court's conclusions more applicable than in matters of child custody where the surrounding testimony is complex and involved and frequently filled with disputes and acrimony."  *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. App. 1996).

We therefore affirm the custody determination made by the Trial Court and remand, with the cost of the appeal assessed to Alice Elizabeth Durrant.

_____
HERSCHEL PICKENS FRANKS, J.